**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-00160-NYW

MITCHELL ARMATA,
DAVID KLEIN, and
HARVEY SENDER, in his capacity as Chapter 7 bankruptcy Trustee of Cool Frootz, LLC,

     Plaintiffs,

v.

CERTAIN UNDERWRITERS AT LLOYD'S LONDON – SYNDICATE 1861, and
ANV GLOBAL SERVICES, INC.,

     Defendants.

---

## ORDER

---

     This matter is before the court on Defendants Certain Underwriters at Lloyd's London – Syndicate 1861 ("Lloyds") and ANV Global Services, Inc. ("ANV," and together with Lloyds, "Defendants") Partial Motion to Dismiss (or the "Motion"), [Doc. 41, filed March 22, 2022].[1] Having reviewed the Motion and corresponding briefing, the entire case file, and the applicable case law, the Partial Motion to Dismiss is **GRANTED**.

## BACKGROUND

### I.    Factual Background

     The following facts are drawn from Plaintiffs' Second Amended Complaint and Jury Demand ("Second Amended Complaint"), [Doc. 39], and taken as true for the purposes of the instant Motion. This is an action regarding an insurance coverage dispute arising from a claim for

---

[1] Originally, this court fully presided over this matter pursuant to 28 U.S.C. § 636(c), *see* [Doc. 5], and the Order of Reference for all purposes dated March 22, 2021. [Doc. 19]. On July 22, 2022, Judge Wang was confirmed as a United States District Judge  and now presides over this case in this capacity. *See* [Doc. 46].

coverage by Plaintiffs Mitchell Armata ("Mr. Armata") and David Klein ("Mr. Klein") under an insurance policy, Policy No. ANV126072A (the "Policy"), which was issued by Defendant ANV to non-party Cool Frootz LLC ("Cool Frootz"), a Delaware limited liability company.  [*Id.* at ¶¶ 3–4, 8].  Plaintiff Harvey Sender ("Mr. Sender" and, collectively with Messrs. Armata and Klein, "Plaintiffs") is the appointed bankruptcy trustee of Cool Frootz.  [*Id.*].

On September 20, 2018, Cool Frootz filed a Chapter 11 Voluntary Petition for bankruptcy in the United States Bankruptcy Court for the District of Colorado, claiming liabilities of $1,000,001 to $10,000,000.  [*Id.* at ¶ 15].  Thereafter, Mr. Sender was appointed as trustee pursuant to 11 U.S.C. § 704, "to administer all assets of the bankruptcy estate, including litigation claims."  [*Id.* at ¶¶ 3, 17].  On or about May 12, 2019, Messrs. Armata and Klein provided notice to Mr. Sender that they were bringing claims against the Directors of Cool Frootz, Richard Naja ("Mr. Naja") and Bruce Beutler ("Mr. Beutler" and, collectively, the "Directors"), who are "Insureds under the Policy."  [*Id.* at ¶¶ 13, 19].  Mr. Sender investigated these claims in May 2019.  [*Id.* at ¶ 21].

In December 2019, Mr. Sender provided notice to Defendants of Messrs. Armata and Klein's claims against the Directors and Cool Frootz's claims against the Directors for "corporate waste and self-dealing" ("Trustee Notice").  [*Id.* at ¶ 22].  Around the same time, Messrs. Armata and Klein also provided notice to Defendants of "their claims for losses caused by the Directors for 'certain acts, omissions, misstatements, and negligence involving the viability of the Company, the capitalization table, the corporate structure, and cooperate [sic] governance'" (the "Shareholder Notice").  [*Id.* at ¶ 23].  Plaintiffs allege that, although they "complied with their obligations under Policy," Defendants failed do the same and, instead, "first responded to the Trustee Notice four months later and flatly denied coverage under the Policy by denying their duty to defend and duty

to indemnify." [*Id.* at ¶¶ 24–25]. Plaintiffs also allege that Defendants "failed, refused to, or inadequately investigate[d] the claims asserted in the notices" and, if they had conducted an investigation, such "investigation was not a proper or reasonable" one. [*Id.* at ¶¶ 26–27]. Plaintiffs further claim that Defendants "failed or refused to respond to the Shareholder Notice." [*Id.* at ¶ 28].

Plaintiffs assert four claims in the Second Amended Complaint: (1) breach of contract, against Lloyd's (Count I); (2) breach of contract, against ANV (Count II); (3) breach of the implied covenant of good faith and fair dealing, against Lloyd's (Count III); and (4) breach of the implied covenant of good faith and fair dealing, against ANV (Count IV). [*Id.* at ¶¶ 30–51].

## II.     Procedural Background

Plaintiffs initiated this action on September 18, 2020, by filing a Complaint and Jury Demand against Defendant ANV in the District Court, City and County of Denver, State of Colorado. *See* [Doc. 6]. On December 29, 2020, the Colorado state court granted Plaintiffs' request to dismiss Defendant ANV and substitute AmTrust at Lloyd's Syndicate 1861 ("Amtrust") as the named defendant. *See* [Doc. 9 at 2–3]. On January 19, 2021, Amtrust removed the action to this court based on diversity jurisdiction. *See* [Doc. 1].

On March 8, 2022, Plaintiffs filed the operative Second Amended Complaint, wherein they added Defendants Lloyd's and ANV as the proper party defendants. *See* [Doc. 39]; *see also* [Doc. 36 at ¶¶ 1–4]. On March 22, 2022, Defendants filed the instant Partial Motion to Dismiss, seeking to dismiss Plaintiffs' bad faith claims under Counts III and IV pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See* [Doc. 41]. On April 12, 2022, Plaintiffs filed

their Response to the Partial Motion to Dismiss, *see* [Doc. 43], and Defendants replied on April 26, 2022, *see* [Doc. 44 ("Reply")].[2]  Thus, the Partial Motion to Dismiss is ripe for disposition.

## LEGAL STANDARDS

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "'across the line from conceivable to plausible.'" (citation omitted)).  The court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

For Counts III and IV in the Second Amended Complaint, *see* [Doc. 39 at ¶¶ 40–51], Plaintiffs allege that Lloyd's and ANV each "breached the implied covenant of good faith and fair

---

[2] The current case deadlines are as follows: the discovery deadline is August 31, 2022; Rule 702 motions are due on September 30, 2022; dispositive motions are due on September 30, 2022; and a Final Pretrial Conference is scheduled for January 12, 2023.  *See* [Doc. 38].

dealing," respectively, as follows:

    (a)   by unreasonably failing and/or refusing to properly evaluate the claims;

    (b)   by unreasonably failing and/or refusing to properly investigate the claims;

    (c)   by failing to adopt and implement reasonable standards for the prompt investigation, processing, and evaluation of the claims arising under the Policy;

    (d)   by failing to affirm or deny coverage of the claims within a reasonable time;

    (e)   by failing and/or refusing to indemnify the claims; and

    (f)   by failing and/or refusing to provide a duty to defend.

[*Id.* at ¶¶ 43, 49].

In the Motion, Defendants seek dismissal of Counts III and IV for failure to state a claim. *See* [Doc. 41]. Defendants argue that "whether New York law, which is the choice of law set forth in the Policy, or Colorado law, which is where Cool Frootz was headquartered prior to filing for bankruptcy, is found to apply to this dispute, the bad faith claims against Defendants cannot stand as a matter of law." [*Id.* at 2]. The court will address the Parties' arguments in turn below, beginning with the choice-of-law provision under the Policy.

## I.    Choice of Law

As a preliminary matter, the court first considers the Parties' arguments regarding choice of law. "When exercising diversity jurisdiction under 28 U.S.C. § 1332, a district court ordinarily applies the choice-of-law rules of the State in which it sits." *Gerson v. Logan River Acad.*, 20 F.4th 1263, 1270 (10th Cir. 2021) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Consequently, this court must look to Colorado's choice-of-law rules in deciding which state's law must apply here. Colorado follows the Restatement (Second) of Conflict of Laws (1971) ("Restatement") for contract actions. *See Kipling v. State Farm Mut. Auto. Ins. Co.*, 774

F.3d 1306, 1310 (10th Cir. 2014) (citing *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (1979)).

Under this approach, courts apply the law of the state chosen by the contracting parties to govern their rights and duties under the contract *unless* "(1) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice; or (2) application of the law of the chosen state would be contrary to a fundamental policy of a state whose law would otherwise govern." *Leica Geosystems, Inc. v. L.W.S. Leasing, Inc.*, 872 F. Supp. 2d 1191, 1202–03 (D. Colo. 2012) (first citing Restatement (Second) of Conflict of Laws § 187(2); and then *Hansen v. GAB Bus. Servs., Inc.,* 876 P.2d 112, 113 (Colo. App. 1994)).

The choice-of-law clause in the Policy at issue in this case states that "[a]ll matters arising hereunder including questions related to the validity interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York notwithstanding New York's conflicts of law rules."  [Doc. 39-1 at 31].  Defendants argue that New York law should apply as the law chosen by the Parties to the Policy.  *See* [Doc. 41 at 7–8].  Plaintiffs counter that Colorado law should apply because (1) New York does not have a substantial relationship to the Parties and no reasonable basis for being sued here, and (2) applying New York law would be contrary to the fundamental policy of Colorado.  *See* [Doc. 43 at 3–8]; *see also Leica*, 872 F. Supp. 2d at 1202–03.

I find that analysis of the choice-of-law issue is unnecessary to resolve the instant Motion. The Parties brief their arguments pursuant to both Colorado and New York law, and they agree the result will be the same regardless of which law the court applies.  *See* [Doc. 41 at 8–14; Doc. 43 at 12 n.4; Doc. 44 at 3–10].  Because the choice of law is not outcome determinative, this court declines to engage in an unnecessary analysis of it in the context of the instant Motion to Dismiss.

*See, e.g.*, *N.W. Bldg. Components, Inc. v. Adams*, No. 22-cv-00790-CMA-KLM, 2022 WL 1689293, at *4 (D. Colo. May 26, 2022) ("The Court's analysis is the same whether federal law, Colorado law, or Idaho law applies. Thus, the Court will not engage in an unnecessary choice of law analysis."); *cf. Excell, Inc. v. Sterling Boiler & Mech., Inc.,* 106 F.3d 318, 320–21 (10th Cir. 1997) (finding it unnecessary to determine choice of law issue where state law and federal common law were substantially similar); *Blixseth v. Cushman & Wakefield of Colo., Inc.*, No. 12-cv-00393-PAB-KLM, 2013 WL 5446791, at *7 n.9 (D. Colo. Sept. 30, 2013) ("For the purpose of resolving defendants' motions to dismiss, the parties appear to agree that the elements of plaintiff's state law claims are defined by either Montana or Colorado law and that the laws of those states define the elements similarly. Thus, the Court finds that a choice of law analysis is not necessary."); *Jones v. Lattimer*, 29 F. Supp. 3d 5, 10 n.3 (D.D.C. 2014) (finding choice of law analysis was premature on motion to dismiss and "better suited" for resolution at summary judgment stage after record had been developed); *Clark Material Handling, Inc. v. Toyota Material Handling, U.S.A., Inc.*, No. 3:12-cv-510, 2012 WL 6107682, at *1 (W.D.N.C. Dec. 10, 2012) (declining to engage in choice of law analysis at motion to dismiss stage in order to fully develop factual record).

The court now turns to Plaintiffs' bad faith claims, beginning with the Parties' arguments under Colorado law and then turning to the arguments under New York law.

## II.     Colorado Law

As a preliminary matter, the Parties do not dispute that Plaintiffs' bad faith claims are third-party claims.  *See* [Doc. 41 at 11; Doc. 43 at 8 n.3]; *see also Allen*, 102 P.3d at 342 ("The third-party context involves claims against the insurer for its alleged misconduct with third-parties asserting claims against the insured.").  In Colorado, a plaintiff may state a third-party claim for bad faith breach of an insurance contract pursuant to common law or statutory law.  *See Traurig*

*v. Owners Ins. Co.*, No. 12-cv-01489-CMA-SKC, 2021 WL 1165536, at *4 (D. Colo. Mar. 26, 2021) ("A statutory bad faith claim is a distinct cause of action separate from a common law bad faith claim." (citing *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 756 (Colo. App. 2012)); *Goodson v. Am. Standard Ins. Co. of Wisc.*, 89 P.3d 409, 414 (Colo. 2004); *see also Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 342 (Colo. 2004) ("An insurer may breach its duty of good faith due to the insurer's conduct with third-parties or with first-parties.").

Here, Plaintiffs do not clarify whether they intend to assert a common law bad faith claim, a statutory bad faith claim, or both. *See* [Doc. 39; Doc. 43]. In the Motion, Defendants contend that the Second Amended Complaint contains "threadbare recitals of . . . a common law bad faith claim," [Doc. 41 at 13–14]; and Plaintiffs' Response does not dispute that Counts III and IV are based on a theory of common law bad faith, *see generally* [Doc. 43]. Further, in support of their bad faith claims, Plaintiffs allege that Defendants "breached the implied covenant of good faith and fair dealing" as follows:

    (a)   by unreasonably failing and/or refusing to properly evaluate the claims;

    (b)   by unreasonably failing and/or refusing to properly investigate the claims;

    (c)   by failing to adopt and implement reasonable standards for the prompt investigation, processing, and evaluation of the claims arising under the Policy;

    (d)   by failing to affirm or deny coverage of the claims within a reasonable time;

    (e)   by failing and/or refusing to indemnify the claims; and

    (f)   by failing and/or refusing to provide a duty to defend.

[*Id.* at ¶¶ 43, 49]. These allegations appear consistent with the elements of a common law bad faith claim. *See Goodson*, 89 P.3d at 414 ("Third-party bad faith arises when an insurance company acts unreasonably in *investigating, defending, or settling a claim* brought by a third person against its insured under a liability policy." (emphasis added)). However, the allegations

also appear to contain the elements of a statutory bad faith claim. *Compare* [Doc. 39 at ¶¶ 43, 49 (alleging Defendants acted in bad faith "by failing to affirm or deny coverage of the claims within a reasonable time" and "by failing and/or refusing to indemnify the claims")] *with Wahlert v. Am. Standard Ins. Co. of Wisc.*, 173 F. Supp. 3d 1187, 1193 (D. Colo. 2016) ("The statutory claim requires proof that a benefit to which the insured was entitled under the policy was unreasonably delayed or denied.").

Nevertheless, because "an insurer's unreasonable conduct is an essential element of both a common law and statutory bad faith insurance claim," *Simental v. State Auto. Mut. Ins. Co.*, No. 21-cv-01725-CMA-NYW, 2022 WL 204603, at *3 (D. Colo. Jan. 24, 2022), the court will address both claims below. *See Wagner v. Am. Fam. Mut. Ins. Co.*, 569 F. App'x 574, 579 (10th Cir. 2014) ("In Colorado, the statutory and common law bad faith claims relating to insurance are similar."); *Wahlert*, 173 F. Supp. 3d at 1193 (observing that "plaintiffs frequently assert both claims"). And, in any event, the Second Amended Complaint fails to plausibly allege a statutory bad faith claim for the same reasons it fails to allege a common law bad faith claim: the allegations in support of those claims are conclusory recitations of the elements of the claims, without sufficient factual allegations to nudge the claims "across the line from conceivable to plausible." *Robbins*, 519 F.3d at 1252 (quoting *Twombly*, 550 U.S. at 570).

### A.     Common Law Bad Faith

Under Colorado law, an insurer must deal in good faith with its insured. *See Decker v. Browning-Ferris Indus. of Colo., Inc.,* 931 P.2d 436, 443 (Colo. 1997). A common law third-party bad faith claim arises "when an insurance company acts unreasonably in investigating, defending, or settling a claim brought by a third person against its insured under a liability policy." *Goodson*, 89 P.3d at 414; *see also Zolman v. Pinnacol Assurance,* 261 P.3d 490, 497 (Colo. App. 2011) ("[A]n insurer will be found to have acted in bad faith only if it has intentionally denied, failed to

process, or failed to pay a claim without a reasonable basis."). Unlike a first-party common law claim, an insured asserting a third-party claim need not show that the insurer acted knowingly or recklessly in disregarding the validity of an insured's claim. *See Trout v. Nationwide Mut. Ins. Co.,* 316 F. App'x 797, 801 (10th Cir. 2009). Rather, in a third-party claim, the insured "must show that a reasonable insurer under the circumstances would have paid or otherwise settled the third-party claim." *Goodson,* 89 P.3d at 415.

### B. Statutory Bad Faith

A statutory bad faith claim arises when an insurer delays or denies payment to its insured without a reasonable basis. *See* Colo. Rev. Stat. § 10-3-1115(1)(a); *Canady v. Nationwide Affinity Ins. Co. of Am.*, No. 19-cv-00344-RBJ, 2020 WL 376494, at *3 (D. Colo. Jan. 23, 2020). To prove a claim of unreasonable delay or denial, an insured must demonstrate that: (1) the insurer delayed or denied payment of benefits to the insured, and (2) the delay or denial was without a reasonable basis. *See Am. Fam. Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018). The Colorado Court of Appeals has defined an unreasonable denial as "when an insurer denies a claim outright" and an unreasonable delay as "when the insurer pays on a claim but disputes the value of that claim, thereby delaying payment of the claim's full value." *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 568 (Colo. App. 2015).

### C. Application

As mentioned, unreasonable conduct on the part of Defendants is an essential element of both a common law and statutory bad faith insurance claim. *See Wagner*, 569 F. App'x 574, 579; *Simental*, 2022 WL 204603, at *3 ("[A]n insurer's unreasonable conduct is an essential element of both a common law and statutory bad faith insurance claim."). Defendants argue that the Second Amended Complaint "is devoid of any non-conclusory allegations that Defendants acted unreasonably." [Doc. 41 at 11]; *see also* [*id.* at 12–14]. Plaintiffs counter that they have alleged

enough facts showing that Defendant acted unreasonably. *See* [Doc. 43 at 8]. Specifically, Plaintiffs contend that "[a]ssuming all [the] allegations are true, . . . it is clear Plaintiffs have asserted that although they fulfilled their obligations under the Policy . . . Defendants did nothing to investigate the claim, and delayed in their response." [*Id.* at 9–10]. Plaintiffs also contend that "Defendants did not even take the basic step of contacting Plaintiffs, or any employee or other person associated with Plaintiffs to discuss, understand[,] or inquire about the claims. Instead . . . [they] embarked on an unreasonable 4-month delay at the end of which they simply denied their obligations under the contract." [*Id.* at 10].

The court respectfully agrees with Defendants, and finds that Plaintiff fails to sufficiently allege facts in the Second Amended Complaint that Defendant acted unreasonably. In the Second Amended Complaint, Plaintiffs allege in relevant part that:

- Cool Frootz is the policyholder of the Policy. *See* [Doc. 39 at ¶ 9].

- ANV was "intimately involved in investigating the claim, making recommendations whether to grant or deny coverage and appointing counsel to represent Defendants against Plaintiffs' claims"; and "has authority to settle and/or participate in the decision to settle claims." [*Id.* at ¶ 10].

- Under the Policy, "Defendants agreed to insure and pay for, *inter alia*, losses or damage with a shared limit of $2,000,000 and $2,000,000 in the aggregate." [*Id.* at ¶ 12].

- In September 2018, Cool Frootz filed for Chapter 11 bankruptcy and, as a result, all of Cool Frootz's assets "became property of the bankruptcy estate . . . including litigation claims and causes of actions against the officers and directors" of Cool Frootz. [*Id.* at ¶¶ 15–16].

- In May 2019, Messrs. Armata and Klein provided notice to Mr. Sender of their assertion of claims against the Directors of Cool Frootz, and requested to discuss those claims with Mr. Sender. *See* [*id.* at ¶¶ 19, 21]. Thereafter, Mr. Sender "investigated the litigation claims of the bankruptcy estate against certain officers and directors of [Cool Frootz] to determine which claims to bring." [*Id.* at ¶ 20].

- In December 2019, Mr. Sender "provided timely notice to Defendants of Plaintiffs Armata and Klein's claims against the Directors as well as [Cool Frootz's] claims against the Directors for 'corporate waste and self-dealing.'" [*Id.* at ¶ 22].

- In December 2019, Messrs. Armata and Klein also "provided timely notice to Defendants of their claims for losses caused by the Directors for 'certain acts, omissions, misstatements, and negligence involving the viability of the Company, the capitalization table, the corporate structure, and cooperate governance.'" [*Id.* at ¶ 23].

- Although Plaintiffs "complied with their obligations under Policy," Defendants failed do the same and, instead, "first responded to the Trustee Notice four months later and flatly denied coverage under the Policy by denying their duty to defend and duty to indemnify." [*Id.* at ¶¶ 24–25].

- "Defendants failed, refused to, or inadequately investigate[d] the claims asserted in the notices" and, if they had conducted an investigation, such "investigation was not [ ] proper or reasonable." [*Id.* at ¶¶ 26–27].

- Defendants "failed or refused to respond to the Shareholder Notice." [*Id.* at ¶ 28].

Further, in support of their bad faith claims under Counts III and IV, Plaintiffs allege that the Policy "prohibits [Defendants] from unreasonably exercising any right under the Policy and from

unreasonably withholding benefits provided by the Policy," [*id.* at ¶¶ 42, 48], and Defendants "breached the implied covenant of good faith and fair dealing" as follows:

(a)   by unreasonably failing and/or refusing to properly evaluate the claims;

(b)   by unreasonably failing and/or refusing to properly investigate the claims;

(c)   by failing to adopt and implement reasonable standards for the prompt investigation, processing, and evaluation of the claims arising under the Policy;

(d)   by failing to affirm or deny coverage of the claims within a reasonable time;

(e)   by failing and/or refusing to indemnify the claims; and

(f)   by failing and/or refusing to provide a duty to defend.

[*Id.* at ¶¶ 43, 49].  These allegations, read together and taken as true for purposes of the instant Motion, fall far short of what is required to avoid dismissal, even at this juncture.

First, the Second Amended Complaint fails to allege *facts* to support that Defendants "act[ed] unreasonably in investigating, defending, or settling a claim brought by" Plaintiffs against the Directors under the Policy, *Goodson*, 89 P.3d at 414 ("Third-party bad faith arises when an insurance company acts unreasonably in investigating, defending, or settling a claim brought by a third person against its insured under a liability policy."), or that Defendants delayed or denied benefits under the Policy without a reasonable basis.  *See Barriga*, 418 P.3d at 1185–86; *see also Soicher* 351 P.3d at 568 (defining an unreasonable denial as "when an insurer denies a claim outright" and an unreasonable delay as "when the insurer pays on a claim but disputes the value of that claim, thereby delaying payment of the claim's full value").  Indeed, although Plaintiffs allege that "Defendants first responded to the Trustee Notice four months [after Mr. Sender sent the notice] and flatly denied coverage under the Policy by denying their duty to defend and duty to indemnify," [Doc. 39 at ¶ 25], Defendants correctly point out that Plaintiffs do not allege facts

sufficient to show "*why* the denial was wrong or *why* Defendants had a duty to defend or indemnify them for the Trustee Notice at all." [Doc. 44 at 6].

Plaintiffs argue in their Response that "Defendants did not take even the basic step of contacting Plaintiffs, or any employee or other person associated with Plaintiffs to discuss, understand or inquire about the claims" and, instead, "embarked on an unreasonable 4-month delay at the end of which they simply denied their obligations under the contract." [Doc. 43 at 10]. Plaintiffs also allege that "Defendants failed, refused to, or inadequately investigate[d] the claims asserted in the notices"; and "[i]f Defendants conducted any investigation, the investigation was not a proper or reasonable investigation." [Doc. 39 at ¶¶ 26–27]. The court, therefore, understands the Second Amended Complaint to allege that Defendants either inadequately investigated Plaintiffs' claims *or* failed to investigate Plaintiffs' claims altogether. *See* [*id.* at ¶¶ 22–27]. The Second Amended Complaint, however, fails to identify any particular timeline that Defendants were required to follow or information that Defendants failed to consider in their investigation or individuals whom Defendants failed to contact; nor does it otherwise identify any specific flaws in Defendants' processing of Plaintiffs' claims. *See generally* [Doc. 39]; *see also In re Qwest Commun. Intern., Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) ("The plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss."). Further, without any factual allegations regarding Defendants' basis for denial, this court cannot determine whether the denial is based on an issue that is not intertwined with any type of investigation into the claim (such as the interpretation of a contractual exclusion), or whether the denial would have necessarily required a factual investigation.

Under these circumstances, the court concludes that Plaintiffs have failed to state a bad faith claim under Colorado common law or statutory law. *See Canady*, 2020 WL 376494, at

*4 ("An insured should not be allowed to automatically accuse an insurer of bad faith in every situation in which the insurer disagrees with the insured about the value of a claim."); *cf. Musel Master, LLC v. Am. Fam. Mut. Ins. Co.*, No. 18-cv-2725-RBJ, 2019 WL 9244886, at *3–5 (D. Colo. June 24, 2019) (conclusory allegations that insurer acted unreasonably by denying an insurer's claim to a full roof replacement despite a competing report submitted to the insurer more than a year after the underlying damage-causing event failed to state a plausible bad faith claim); *Ryals v. Am. Fam. Ins. Co., S.I.*, No. 20-cv-02736-NYW, 2021 WL 848195, at *7 (D. Colo. Mar. 5, 2021) (finding the plaintiff "fail[ed] to allege the requisite unreasonable conduct by Defendant to state an insurance bad faith claim under Colorado statutory or common law."); *Anderson v. Am. Nat'l Prop. and Cas. Co.*, No. 17-cv-03016-KMT, 2020 WL 406077, at *11 (D. Colo. Jan. 23, 2020) (granting summary judgment in insurer's favor in part because "reasonable value disputes are not evidence of bad faith or unreasonable conduct").

## III.   New York Law

Defendants also argue that Plaintiffs' bad faith claims should be dismissed under New York law on the grounds that New York law precludes "a bad faith claim that is duplicative of a breach of contract claim." [Doc. 41 at 8]. The court respectfully agrees.

"Under New York law, every contract carries with it an implied duty of good faith and fair dealing." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1260 (10th Cir. 2005), *as amended on reh'g in part* (Apr. 11, 2006) (citing *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 639 N.Y.S.2d 977, 663 N.E.2d 289, 291 (1995)); *see also Scottsdale Ins. Co. v. McGrath*, 549 F. Supp. 3d 334, 343 (S.D.N.Y. 2021) ("There is authority under New York law for a claim of bad faith liability in a third-party insurance context both in the denial of coverage and for bad faith failure to settle."). However, a breach of the implied covenant of good faith and fair

dealing does not arise by "the mere exercise of one's contractual rights."  *PepsiCo*, 431 F.3d at

1260 (quoting *Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.,* 723 F.Supp. 976, 991

(S.D.N.Y.1989) (internal quotation marks omitted)).  "Rather, 'it simply ensures that parties to a

contract perform the substantive, bargained-for terms of their agreement and that parties are not

unfairly denied express, explicitly bargained for benefits.'" *Id.* (citation omitted).  Accordingly,

"[a] party which acts in accordance with rights expressly provided in a contract cannot be held

liable for breaching an implied covenant of good faith." *In re Minpeco, USA, Inc.*, 237 B.R. 12,

26 (Bankr. S.D.N.Y. 1997).  Further, "such a claim may be brought, if at all, only where one party's

conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived

the other party of the benefit of its bargain." *Sauer v. Xerox Corp.*, 95 F. Supp. 2d 125, 132

(W.D.N.Y. 2000), *aff'd,* 5 F. App'x 52 (2d Cir. 2001).  In other words, a "plaintiff can maintain

its claim for breach of the implied covenant of good faith and fair dealing '*only if* it is based on

allegations different than those underlying the accompanying breach of contract claim.'"

*Concesionaria DHM, S.A. v. Int'l Fin. Corp.,* 307 F. Supp. 2d 553, 564 (S.D.N.Y. 2004) (emphasis

added) (citation omitted).

    In light of these standards, I find that Plaintiffs' allegations underlying their bad faith

claims under Counts III and IV are the same as those underlying their breach of contract claims

under Counts I and II.  Plaintiffs' breach of contract claims are based on the allegations that,

pursuant to the Policy, Defendants are "contractually obligated to defend [Cool Frootz] and

indemnify Plaintiffs for the losses per the claims," and Defendants "breached the Policy by failing

to comply with [their] contractual obligations under the Policy to investigate the claim, determine

coverage, provide a defense within a reasonable period of time, and provide coverage or

indemnification on the claims."  [Doc. 39 at ¶¶ 32–33, 37–38].  Plaintiffs' bad faith claims are

similarly based on the assertions that Defendants "breached the implied covenant of good faith and fair dealing" by:

    (a)   [ ] unreasonably failing and/or refusing to properly evaluate the claims;

    (b)   [ ] unreasonably failing and/or refusing to properly investigate the claims;

    (c)   [ ] failing to adopt and implement reasonable standards for the prompt investigation, processing, and evaluation of the claims arising under the Policy;

    (d)   [ ]failing to affirm or deny coverage of the claims within a reasonable time;

    (e)   [ ] failing and/or refusing to indemnify the claims; and

    (f)   [ ] failing and/or refusing to provide a duty to defend.

[*Id.* at ¶¶ 43, 49].

Plaintiffs disagree, arguing that their bad faith claims are distinct from their breach of contract claims because (1) "the damages sought for each claim are distinctly different" insofar as "Plaintiffs seek punitive damages under the breach of covenant of good faith and fair dealing claim and damages such as compensatory damages under the breach of contract claim"; and (2) "[t]he allegations in each of the claims are also different." [Doc. 43 at 16–17]. The court finds Plaintiff's arguments unpersuasive.

First, under New York law, "punitive damages are unavailable in breach of contract cases absent extraordinary circumstances." *Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 123 (S.D.N.Y. 2002). To recover punitive damages, the claim must go "beyond remedying private wrongs to vindicate public rights." *Rocanova v. Equitable Life Assur. Soc. of U.S.,* 83 N.Y.2d 603, 613 (N.Y. 1994); *see also Conocophillips v. 261 East Merrick Road Corp.,* 428 F. Supp. 2d 111, 128 (E.D.N.Y. 2006). As explained by the New York Court of Appeals,

A complaint does not state a claim for compensatory or punitive damages by alleging merely that the insurer engaged in a pattern of bad-faith conduct. *The complaint must first state a claim of egregious tortious conduct directed at the*

17

> *insured claimant*.  Only then does an alleged pattern of bad-faith conduct attain legal significance insofar as it demonstrates that a public wrong would be vindicated by the award of punitive damages.

*Rocanova*, 634 N.E.2d at 945 (emphasis added); *see also New York Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 316 (N.Y. 1995) (punitive damages recoverable only "if necessary to vindicate a public right").  Here, as explained above, Plaintiffs fail to allege facts in the Second Amended Complaint to support their bad faith claims, let alone any facts supporting that Defendants acted "egregiously" with respect to their obligations under the Policy.[3]  In addition, Plaintiffs' assertion that they seek other (i.e., punitive) damages under their bad faith claims, *see* [Doc. 43 at 16], does not explain how those claims are "based on allegations different than those underlying the accompanying breach of contract claim." *Concesionaria DHM*, 307 F. Supp. 2d at 564 (internal quotation marks omitted).

Second, Plaintiffs' argument that the breach of contract and bad faith claims contain "different" allegations fares no better.  Specifically, Plaintiffs contend that their bad faith claims contain allegations regarding "Defendants' mindset and intent . . . fraud, [and] malice," while their breach of contract claims do not.  *See* [Doc. 41 at 17 ("[W]ith respect to the breach of covenant of good faith and fair dealing, Plaintiffs alleged in the Complaint that Defendants were fully aware of the probable dangerous consequences of its conduct and acted with a conscious disregard of the rights of the Trustee, and Lloyds' conduct was done with the intent to vex, injure, or annoy the Insureds such as to constitute oppression, fraud or malice."); *see also* [Doc. 39 at ¶¶ 45, 51]. However, factual support notwithstanding, these additional allegations do not change that Plaintiffs' bad faith claims under Counts III and IV are based on the same allegations as those

---

[3] Plaintiffs' Response fails to address Defendants' assertion in the Motion that "[u]nless a plaintiff specifically pleads that the insurer's conduct is 'egregious to constitute an independent tort,' a court must dismiss the bad faith claim."  [Doc. 41 at 9 (quoting *Wiener*, 202 F. Supp. at 123)].

*underlying* the breach of contract claims under Counts I and II.[4]  *Compare* [Doc. 39 at ¶¶ 3–39] *with* [*id.* at ¶¶ 40–44, 46–50].

As mentioned, under New York law, the duty of good faith is an implied contractual term, and thus "breach of that duty is merely a breach of the underlying contract." *W.S.A. Inc. v. ACA Corp.,* No. 94 Civ. 1868, 1996 WL 551599, at *9 (S.D.N.Y. Sept. 27, 1996) (quoting *Fasolino Foods Co. v. Banca Nazionale del Lavoro,* 961 F.2d 1052, 1056 (2d Cir. 1992)).  Under the Policy here, Defendants allegedly had the express duty to "investigate the claim, determine coverage, provide a defense within a reasonable period of time, and provide coverage or indemnification on the claims." [Doc. 39 at ¶¶ 33, 38].  Accordingly, under the circumstances of this case, the failure to investigate Plaintiffs' claims, determine coverage, provide a defense, or provide coverage or indemnification "was either a breach of the contract or not, but the covenant of good faith cannot add terms to the contract that do not exist." *Concesionaria DHM*, 307 F. Supp. 2d at 564 ("The course of conduct by the defendants from November 1999 through January 2000 goes to the alleged breach of that contract, including all of the terms of the contract. The predicate conduct for the claims is the same, despite the attempt to emphasize different aspects of the conduct in the implied covenant claim."); *see Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc.,* 90 F.Supp.2d 401, 419 (S.D.N.Y. 2000) (finding contract and implied covenant claims redundant where they "clearly rest[ed] on the same factual predicate-Deutsche Bank's alleged involvement in 1995 CFTC order"); *W.S.A., Inc.,* 1996 WL 551599, at *9 (rejecting plaintiff's attempt to bifurcate "its breach

---

[4] Plaintiffs also fail to address how the Second Amended Complaint sufficiently alleges facts to support Plaintiffs' argument in the Response that Defendants' "conduct was done with the intent to vex, injure, or annoy the Insureds such as to constitute oppression, fraud or malice." [Doc. 39 at ¶¶ 45, 51].

of contract claim, so as to place some of the allegations in support thereof in the category of 'breach of covenant of fair dealing'").

Finally, Plaintiff's reliance on *25 Bay Terrace Associates, L.P. v. Public Service Mutual Insurance Company*, 144 A.D.3d 665 (2016), is misplaced. *See* [Doc. 43 at 15–18]. In that case, the New York Court of Appeals upheld the denial of the defendant's motion to dismiss the plaintiff's bad faith claim because "[i]n opposition to the motion, the plaintiff submitted affidavits from, among others, its property manager, one of its tenants, and its roofing contractor, all of whom stated that the defendant's adjustor who inspected the property on two occasions prior to the defendant's denial of the majority of the claim verbally assured them that water had infiltrated the building as a result of the hurricane and that the loss was completely covered under the policy." *25 Bay Terrace Assocs.*, 144 A.D.3d at 667–68. The court further noted that the affidavits "also alleged that, subsequent to that representation, the defendant sent an engineer to inspect the building for the sole purpose of preparing a report, which was factually inaccurate, to support its denial of the entire claim." *Id.* at 667. Here, Plaintiffs fails to submit any substantive argument, let alone evidence similar to that presented in *25 Bay Terrace Associates*, to support their attempt to maintain their bad faith claims under New York law. *See* [Doc. 43 at 15–18].

In sum, the court finds that Plaintiffs fail to state bad faith claims under New York law and, therefore, must be dismissed. *See Wiener*, 202 F. Supp. 2d at 124 ("As New York does not recognize bad faith denial of coverage as an independent tort, and because plaintiff has failed to state an underlying tort cause of action upon which punitive damages could be grounded, plaintiff fails to state a claim under New York law."); *cf. East Ramapo Ctr. Sch. Dist. v. New York Schs. Ins. Reciprocal*, 158 N.Y.S.3d 173 (N.Y. App. Div. 2d Dept. 2021) (reversing the dismissal of the plaintiff's bad faith claim where "[t]he complaint alleged, inter alia, that the defendant failed to

investigate in good faith the claims in the underlying action, denied coverage to the plaintiff based upon a manufactured and/or 'nonexistent' assertion, deviated from industry practices by denying coverage to the plaintiff where '[n]o reasonable insurer would have denied [such] coverage,' and '[disclaimed] coverage with gross disregard for the facts and applicable law'").

## IV.   Leave to Amend

Finally, Plaintiffs assert that they should be granted leave to amend if the court grants the Partial Motion to Dismiss "for whatever reason." [Doc. 43 at 18]. Defendants do not address this request in their Reply. *See* [Doc. 44]. In any event, Plaintiffs' inclusion of this request in their Response is improper. *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document."). Nor do Plaintiffs identify any specific basis for amendment. Accordingly, the court declines to address any arguments as to amendment in this Order.

**CONCLUSION**

For the reasons set forth herein, **IT IS ORDERED** that:

(1)   Defendants' Partial Motion to Dismiss [Doc. 41] is **GRANTED**; and

(2)   Plaintiffs' bad faith claims (Counts III and IV) are **DISMISSED without prejudice**.

DATED:  August 10, 2022                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge