IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 21-cv-00160-NYW-STV

MITCHELL ARMATA,
DAVID KLEIN, and
HARVEY SENDER, in his capacity as Chapter 7 bankruptcy trustee of Cool Frootz, LLC,

    Plaintiffs,

v.

CERTAIN UNDERWRITERS AT LLOYD'S LONDON – SYNDICATE 1861, and
ANV GLOBAL SERVICES, INC.,

    Defendants.

## ORDER

This matter is before the Court on two motions filed by Defendants Certain Underwriters at Lloyd's London – Syndicate 1861 ("Lloyd's") and ANV Global Services, Inc. ("ANV," and together with Lloyd's, "Defendants"):

(1) the Motion for Reconsideration of Order Denying Summary Judgment or, in the Alternative, for Leave to Appeal ("Motion for Reconsideration" or "Motion"), [Doc. 66, filed June 21, 2023]; and

(2) the Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) ("Motion for Judgment on the Pleadings"), [Doc. 74, filed August 8, 2023].

The Court finds that oral argument would not materially assist in the resolution of these motions. Having reviewed the motions and corresponding briefing, the entire case file, and the applicable case law, the Motion for Reconsideration is **DENIED**, and the Motion for Judgment on the Pleadings is **DENIED**.

# BACKGROUND[1]

## I.  Factual Background

This is an insurance coverage dispute arising from a claim for coverage by Plaintiffs Mitchell Armata ("Mr. Armata") and David Klein ("Mr. Klein") under an insurance policy, Policy No. ANV126072A (the "Policy"), which was issued by Defendant ANV to non-party Cool Frootz LLC ("Cool Frootz"), a Delaware limited liability company. [Doc. 48 at ¶¶ 3–4, 8–9]. The Policy Period set forth in the Declarations is October 30, 2018 to October 30, 2019. [Doc. 51 at ¶ 9 (citing [Doc. 39-1 at 16; Doc. 48-1 at 16]); Doc. 58 at 3, ¶ 9]. Plaintiff Harvey Sender ("Mr. Sender" or "Bankruptcy Trustee" and, collectively with Messrs. Armata and Klein, "Plaintiffs") is the appointed bankruptcy trustee of Cool Frootz. [Doc. 39 at ¶ 3; Doc. 48 at ¶ 3].

On September 20, 2018, Cool Frootz filed a Chapter 11 Voluntary Petition for bankruptcy in the United States Bankruptcy Court for the District of Colorado, claiming liabilities of $1,000,001 to $10,000,000. [Doc. 39 at ¶ 15]. Thereafter, Mr. Sender was appointed as trustee pursuant to 11 U.S.C. § 704, "to administer all assets of the bankruptcy estate, including litigation claims." [*Id.* at ¶¶ 3, 17; Doc. 48 at ¶ 3]. Counsel for Messrs. Armata and Klein sent an email to Mr. Sender on May 2, 2019 ("May 2, 2019 Email"), indicating that they represented "minority equity members" in Cool Frootz who "intend to assert claims against certain other officers/members." [Doc. 48-2 at 2]. Mr. Sender investigated these claims in May 2019. [Doc. 39 at ¶ 20].

By letter dated December 27, 2019, Mr. Sender provided notice to Defendants of Messrs. Armata's and Klein's claims against "Cool Frootz's directors and officers, Richard Naja and Bruce

---

[1] Where the Court draws facts from the Second Amended Complaint, [Doc. 39], it provides them here solely as background, not as undisputed factual assertions.

Beutler[,]" for "corporate waste and self-dealing" ("Trustee Notice"). [*Id.* at ¶ 22; Doc. 51 at ¶ 22; Doc. 48-6 at 4–5]. Around the same time, Messrs. Armata and Klein also provided notice to Defendants of their claims for losses caused by Messrs. Naja and Beutler for "certain acts, omissions, misstatements, and negligence involving . . . the viability of the Company, the capitalization table, the corporate structure, and corporate governance" (the "Shareholder Notice"). [Doc. 51 at ¶ 18; Doc. 48-5 at 2–3]. Plaintiffs alleged that, although they "complied with their obligations under the Policy," Defendants failed do the same and, instead, "first responded to the Trustee Notice four months later and flatly denied coverage under the Policy by denying their duty to defend and duty to indemnify." [Doc. 39 at ¶¶ 24–25]. Plaintiffs also alleged that Defendants "failed, refused to, or inadequately investigate[d] the claims asserted in the notices" and, if they had conducted an investigation, such "investigation was not a proper or reasonable" one. [*Id.* at ¶¶ 26–27]. Plaintiffs further claimed that Defendants "failed or refused to respond to the Shareholder Notice." [*Id.* at ¶ 28].

## II.   Procedural Background

Plaintiffs initiated this action on September 18, 2020, by filing a Complaint and Jury Demand against Defendant ANV in the District Court, City and County of Denver, State of Colorado. *See* [Doc. 6]. On December 29, 2020, the Colorado state court granted Plaintiffs' request to dismiss Defendant ANV and substitute AmTrust at Lloyd's Syndicate 1861 ("AmTrust") as the named defendant. *See* [Doc. 9 at 2–3]. On January 19, 2021, AmTrust removed the action to the United States District Court for the District of Colorado, based on diversity jurisdiction. *See* [Doc. 1]. On March 8, 2022, Plaintiffs filed the operative Second Amended Complaint, wherein they named Defendants Lloyd's and ANV as the proper party defendants. *See* [Doc. 39]; *see also* [Doc. 36 at ¶¶ 1–4]. In the operative Second Amended

3

Complaint, Plaintiffs asserted four claims: (1) breach of contract, against Lloyd's ("Count I"); (2) breach of contract, against ANV ("Count II"); (3) breach of the implied covenant of good faith and fair dealing, against Lloyd's ("Count III"); and (4) breach of the implied covenant of good faith and fair dealing, against ANV ("Count IV"). [Doc. 39 at ¶¶ 30–51].

On March 22, 2022, Defendants filed a Partial Motion to Dismiss, seeking to dismiss Plaintiffs' bad faith claims under Counts III and IV pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* [Doc. 41]. On August 10, 2022, the Court granted the Partial Motion to Dismiss, leaving only Counts I and II, alleging breach of contract against Lloyd's and ANV, respectively. *See* [Doc. 47]. On August 24, 2022, Defendants filed their Answer to the Second Amended Complaint, [Doc. 48 at 1–13], along with a Second Amended Counterclaim for Declaratory Judgment, seeking a declaration "that no coverage is available for the May 2, 2019 Email" or based on any of the other notice letters that Plaintiffs submitted to Defendants regarding their claims against the officers of Cool Frootz, [*id.* at 13–25].

On September 29, 2022, Defendants filed a Motion for Summary Judgment, seeking summary judgment in their favor on Plaintiffs' remaining breach of contract claims and Defendants' Second Amended Counterclaim "seeking a declaration that coverage is not available for claims made by" Cool Frootz or the Trustee under the Policy. [Doc. 51 at 1].[2] Specifically, Defendants argued that for coverage to be triggered under the Policy, "a **Claim** for a **Wrongful Act** . . . during the **Policy Period**"[3] had to be made against the insured, i.e., Cool Frootz, but no such **Claim** was made, and thus, the Policy was not triggered. [*Id.* at 2]. Plaintiffs disagreed,

---

[2] Defendants made no distinction between their arguments seeking summary judgment in their favor with respect to the Second Amended Counterclaim and summary judgment against Plaintiffs as to their breach of contract claims. *See generally* [Doc. 51].

[3] When referring to specific terms used in the subject Policy, this Order will utilize the same bolded terms as used in the Policy.

countering that the May 2, 2019 Email falls under the Policy's definition of a **Claim**. *See* [Doc. 58]. After full briefing, on May 24, 2023, the Court issued an Order denying the Motion for Summary Judgment, concluding that the May 2, 2019 Email constitutes a **Claim** under the Policy. *See* [Doc. 65].

On June 21, 2023, Defendants filed the instant Motion for Reconsideration, arguing that the Court erred in denying the Motion for Summary Judgment on the grounds that "this Court (1) incorrectly framed the issue; (2) misapplied New York law; and (3) violated New York's rules governing the interpretation of insurance policies." [Doc. 66 at 2]. Defendants request that the Court "enter an Order reversing its May 24, 2023 Memorandum Decision and Order denying summary judgment to the Defendants or, in the alternative, certifying the . . . Order for appeal to the United States Court of Appeals for the Tenth Circuit." [*Id.* at 15]. Plaintiffs responded in opposition to the Motion for Reconsideration on July 19, 2023, [Doc. 72], and Defendants replied on August 2, 2023, [Doc. 73]. The Motion for Reconsideration is thus ripe for disposition.

Defendants subsequently filed the instant Motion for Judgment on the Pleadings on August 8, 2023, seeking dismissal of the Second Amended Complaint with prejudice on the grounds that "Plaintiffs have failed to state claims upon which relief may be granted." [Doc. 74 at 1]. Although Plaintiffs have not yet responded, the Court finds it appropriate to resolve this motion in this Order. *See* D.C.COLO.LCivR 7.1(d) ("Nothing in this rule precludes a judicial officer from ruling on a motion at any time after it is filed.").

Finally, this matter is presently set for a four-day bench trial beginning on October 23, 2023. *See* [Doc. 71].

ANALYSIS

I.  **Motion for Reconsideration**

    A.  **Legal Standard**

The Federal Rules of Civil Procedure do not expressly provide for a motion for reconsideration. Because Defendants seek reconsideration of a non-final order, the Motion for Reconsideration "falls within [the] [C]ourt's plenary power to revisit and amend interlocutory orders as justice requires." *United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, No. 06-cv-00037-PAB-CBS, 2010 WL 420046, at *3 (D. Colo. Feb. 1, 2010); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

Courts in this District have applied different standards on motions for reconsideration of non-final orders. *See United Fire & Cas. Co.*, 2010 WL 420046, at *3 (listing cases applying Rule 59(e) standard, Rule 60(b) standard, and "law of the case" standard). But as a general principle, courts may grant motions to reconsider where there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A motion for reconsideration is not an avenue for a party to reargue issues by rehashing facts and arguments already addressed or available, yet neglected, in the original proceeding. *See id.*; *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). "The decision to grant reconsideration is committed to the sound discretion of the district court." *F.T.C. v. Chapman*, 714 F.3d 1211, 1219 (10th Cir. 2013) (internal alterations, quotation, and citation omitted), and courts in this District generally "have imposed limits on their broad discretion to revisit

6

interlocutory orders" as justice requires, *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, No. 14-cv-00134-PAB-KMT, 2015 WL 3542699, at *2 (D. Colo. June 5, 2015).

### B.      Application

Defendants contend that the Court's denial of the Motion for Summary Judgment was erroneous in three ways—namely, "this Court (1) incorrectly framed the issue; (2) misapplied New York law; and (3) violated New York's rules governing the interpretation of insurance policies." [Doc. 66 at 2].  For the reasons explained below, the Court finds that Defendants have failed to raise sufficient grounds to warrant reconsideration of the Court's May 24, 2023 Order.  The Court will address each dispute in turn.

### 1.      Framing the Issue

First, Defendants challenge this Court's consideration of "whether the May 2, 2019 Email constitutes a *written* 'imperative solicitation' for monetary or other legal relief against Cool Frootz, as opposed to merely 'a request carrying no legal consequences.'" [Doc. 65 at 16 (quoting *Weaver v. Axis Surplus Ins. Co.*, 639 F. App'x 764, 766 (2d Cir. 2016))].  According to Defendants, the Court "incorrectly framed the issue . . . [b]y failing to frame the issue based on the contents of the May 2, 2019 Email—that is, whether it constitutes a written 'imperative solicitation' for monetary or other legal relief against *certain officers/members*."  [Doc. 66 at 2 (emphasis in original)].  Defendants argue that the Court "committed clear error" and "misapprehended [the] facts" because "the May 2, 2019 Email was directed at, and requested a conversation with, the Bankruptcy Trustee about pursuing claims *against certain officers/members*, not Cool Frootz."  [*Id.* (emphasis in original)].

In other words, the basis for Defendants' assignment of "clear error" here is their assertion the May 2, 2019 Email was directed to the Bankruptcy Trustee concerning claims against certain officers/members of Cool Frootz, but not Cool Frootz itself.  *See* [*id.* at 7].  But this argument

7

merely rehashes arguments that Defendants raised in their Motion for Summary Judgment. For instance, Defendants argued:

> the May 2, 2019 Email is not even sent to any of the purported **Insured Persons** the Shareholder Group is supposedly bringing a claim against. Instead, it is the mention of the possibility of a future lawsuit, sent to counsel for the Trustee to discuss with him "possible points of cooperation we may have with the trustee in pursuing our claims." (*Id.*). That is not a **Claim** as defined by the Policy under New York law.

[Doc. 51 at 16]; *see also* [Doc. 60 at 4 ("Indeed, the May 2, 2019 Email is not even directed against the alleged **Insured Persons** against whom the Plaintiffs eventually asserted the Demand Letter, but rather was sent to the Bankruptcy Trustee to set up a call to discuss "possible points of cooperation." (emphasis omitted))]. As previously mentioned, it is inappropriate to seek reconsideration based on "issues already addressed or . . . arguments that could have been raised in prior briefing." *Servants of Paraclete*, 204 F.3d at 1012.

In any event, Defendants' first assignment of error lacks merit. Defendants maintain that the Court "misapprehended the facts" by improperly considering the issue of "whether the May 2, 2019 Email constitutes a written 'imperative solicitation' for monetary or other legal relief against *Cool Frootz*." [Doc. 66 at 7–8]. Defendants contend that, instead, the Court should have "frame[d] the issue based on the language in the May 2, 2019 Email—that is, whether it constitutes a written 'imperative solicitation' for monetary or other legal relief against *certain officers/members*." [*Id.* at 7 (emphasis added)]. Significantly, however, Defendants fail to explain how framing the issue as a "claim against Cool Frootz" as opposed to a "claim against Richard Naja and Bruce Beutler" makes any difference to the outcome of the Motion for Summary Judgment. Indeed, Defendants expressly acknowledge that the "certain officers/members" referenced in the May 2, 2019 Email are "Cool Frootz's directors and officers, Richard Naja and Bruce Beutler." [*Id.*]. To the extent that Defendants now argue that the Policy only provides coverage for Cool Frootz, but no coverage

8

for Messrs. Naja and Beutler as "officers/members" of Cool Frootz, Defendants failed to raise any such arguments in the Motion for Summary Judgment.  *See* [Doc. 51; Doc. 60].

### 2. Application of New York Law

Second, Defendants argue that the Court "misapplied New York law" in concluding that the May 2, 2019 Email constitutes a **Claim** under the Policy.  *See* [Doc. 66 at 8–12].  Specifically, Defendants challenge this Court's application of three cases that Defendants cited in the Motion for Summary Judgment: (1) *Weaver v. Axis Surplus Insurance Co.*, 639 F. App'x 764 (2d Cir. 2016); (2) *Evanston Insurance Co. v. GAB Business Services, Inc.*, 132 A.D.2d 180 (1987); and (3) *Gil Enterprises, Inc. v. Delvy*, 79 F.3d 241, 246 (2d Cir. 1996).  *See* [*id.* at 8–11]; *see also* [Doc. 51 at 13–16].  In addition, Defendants argue that another case—*Pine Management, Inc. v. Colony Insurance Co.*, No. 1:22-cv-02407 (MKV), 2023 WL 2575082 (S.D.N.Y. Mar. 20, 2023)—is "instructive" to help resolve the issue of whether the May 2, 2019 Email is a **Claim** under the Policy.  [Doc. 66 at 11–12].

This Court is not persuaded that any of these arguments presents sufficient grounds for reconsideration of its May 24, 2023 Order.  As previously mentioned, a court generally may reconsider a prior order where there is an intervening change in controlling law, new evidence that was previously unavailable, and to "correct clear error or prevent manifest injustice."  *Servants of Paraclete*, 204 F.3d at 1012.  Defendants identify none of these circumstances here.  Rather, as indicated above, Defendants are expressly reasserting the same arguments they raised in the Motion for Summary Judgment.[4]  *See id.* ("It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.").

---

[4] *Compare, e.g.*, [Doc. 66 at 12 ("[U]nlike *Pine Management*, the May 2, 2019 Email was not directed at the party against whom Armata and Klein intended to pursue claims.  Indeed, the May 2, 2019 Email was nothing more than a request directed at the Bankruptcy Trustee, who did not . . . legally owe Plaintiffs anything, to have a conversation about points of cooperation regarding

9

Moreover, although Defendants disagree with the Court's application of *Weaver*, *Evanston*, and *Gil Enterprises*, their examinations of those cases in the instant Motion for Reconsideration are significantly limited. Indeed, Defendants cherry-pick the portions of those cases that they believe support their arguments while disregarding other relevant sections that this Court specifically addressed in its May 24, 2023 Order. *Compare* [Doc. 66 at 8–11], *with* [Doc. 65 at 14–28].

For instance, in the Motion for Reconsideration, Defendants acknowledge that, in the subject Order, this Court "utilized the definition [of the term 'demand'] found in the Second Circuit['s] decision in *Weaver* . . . , wherein the Second Circuit explained that 'a demand requires an imperative solicitation *for that which is legally owed*, as distinguished from a request carrying no legal consequences.'" [Doc. 66 at 8 (emphasis in original) (quoting *Weaver*, 639 F. App'x at 766)]. Defendants then conclude that, "[t]hus, to correctly constitute a demand under *Weaver*, the May 2, 2019 Email must be an 'imperative solicitation for *that which is legally owed*[,]'" and "the May 2, 2019 Email does not fulfill this definition." [*Id.*].

Significantly, however, Defendants appear to ignore the fact that the Court utilized *Weaver*'s definition of "demand" for two express reasons: because it (1) sufficiently captures "what a claim *is*," and (2) "clarifies what a claim is *not*—that is, 'a request carrying no legal consequences.'" [Doc. 65 at 14–15 (citation omitted)]. After setting forth this definition, the Court explained as follows:

---

potential claims against other 'certain other officers/members'.")], *with* [Doc. 51 at 16 ("Indeed, the May 2, 2019 Email is not even sent to any of the purported **Insured Persons** the Shareholder Group is supposedly bringing a claim against. Instead, it is the mention of the possibility of a future lawsuit, sent to counsel for the Trustee to discuss with him 'possible points of cooperation we may have with the trustee in pursuing our claims.' (*Id.*). That is not a **Claim** as defined by the Policy under New York law.")].

10

> Defendants contend that the May 2, 2019 Email is not a "demand" but instead "is simply 'a request carrying no legal consequences,' which is not a **Claim** under New York law." . . . *Notably, Defendants make this conclusory assertion without actually discussing the distinction "between a demand and a mere request which carries no legal consequences." Gil Enters., Inc. v. Delvy*, 79 F.3d 241, 246 (2d Cir. 1996). "To make such a distinction," however, "it is necessary to look to the purpose of a demand." *Id.*
>
> As the Second Circuit explained in *Gil Enterprises*, "the gravamen of a legal demand is its *notice providing function*." *Id.* at 246 (emphasis added).

[*Id.* at 16 (emphasis added)]. Not only did Defendants fail to undertake this analysis in the Motion for Summary Judgment—despite expressly acknowledging that *Weaver* relied upon *Gil Enterprises* to define the term "demand," *see* [Doc. 51 at 13]—but Defendants now argue that this Court "misapplied *Gil* [*Enterprises*], because the May 2, 2019 Email did not serve as a notice providing function vis-à-vis the 'certain officers/members'." [Doc. 66 at 11]; *see also* [*id.* at 10 ("Cool Frootz was not the party against whom Armata and Klein intended to pursue claims as set forth in the May 2, 2019 Email.")]. These arguments are improper on a motion for reconsideration.[5]  *See Servants of Paraclete*, 204 F.3d at 1012 ("Absent extraordinary

---

[5] Defendants similarly argue that the Court "misapplied *Evanston*" by relying on a "phone call between Plaintiffs' counsel and counsel for the Bankruptcy Trustee to bridge the gap between its reasoning and conclusion that the May 2, 2019 Email is a **Claim**." [Doc. 66 at 9–10]. According to Defendants, this "does not comport with *Evanston*'s holding, since that case did not rely on verbal communications to satisfy a **Claim** definition" and "the demand [in *Evanston*] was sent to the parties against whom the relief was being sought"; whereas, here, "the May 2, 2019 Email was not sent to the 'certain other officers/members' against whom Armata and Klein intended to pursue claims." [*Id.*]. Notwithstanding the fact that Defendants are merely expressing disagreement with the Court's findings, which is an insufficient basis for seeking reconsideration, the Court noted in its Order that "[s]ignificantly, the *Evanston* court made two observations that Defendants overlook in relying on that case." [Doc. 65 at 24]. The Court then analyzed those observations in relation to Defendants' arguments in the Motion for Summary Judgment. *See* [*id.* at 24–28]. In the instant Motion, Defendants yet again seem to disregard those portions of *Evanston*—and this Court's analysis of the same—that they do not like in favor of their own interpretation of that case. *See* [Doc. 66 at 9–10].

11

circumstances, not present here, the basis for the second motion must not have been available at the time the first motion was filed.").

### 3. Application of New York's Rules Governing the Interpretation of Insurance Policies

Third, Defendants argue that the Court violated "New York's rules governing the interpretation of insurance policies" because, in concluding that the May 2, 2019 Email is a **Claim**, the Court, *inter alia*, "predicated [this conclusion] on a rewriting of the Policy's unambiguous definition of a **Claim**," and failed to "give the words contained in the definition of a **Claim** their plain and ordinary meaning." [Doc. 66 at 12–13]. Specifically, because the Court discussed in the subject Order a May 8, 2019 *telephone call* between counsel for Plaintiffs and the Bankruptcy Trustee that related to the May 2, 2019 Email, *see* [Doc. 65 at 26], Defendants insist that the Court effectively erased the word "written" from the Policy's definition of a **Claim**, thereby violating the law of New York as to interpretation of insurance policies. *See* [*id.* at 13–14]. But, as Plaintiffs correctly point out, Defendants are merely rehashing their arguments from their Motion for Summary Judgment, which, again, "is improper on a motion for reconsideration." [Doc. 72 at 14]; *see, e.g.*, [Doc. 51 at 12 n.3 ("To the extent Plaintiffs are asserting that this discussion in some way constitutes a **Claim** under the Policy, that argument fails on its face, as the Policy's definition clearly requires that a **Claim** must be a '*written* demand for monetary or other legal relief made against any **Insured**.'" (emphasis in original))].[6]

---

[6] Defendants also argue that the Court's interpretation of the Policy renders "meaningless" Section VII.B of the Policy—i.e., the notice of occurrence provision. [*Id.* at 13–15]; *see* [Doc. 51-1 at 31–32 (Section VII.B)]. Specifically, Defendants contend that the May 2, 2019 Email is really an attempt to submit a notice of occurrence pursuant to Section VII.B of the Policy, and, therefore, the Court's interpretation of the Policy rendered that section of the Policy meaningless. *See* [Doc. 66 at 14–15; Doc. 73 at 11]. The Court finds Defendants' position puzzling. Indeed, this Court noted in the subject Order that "Plaintiffs explicitly state in the Response that they 'are not seeking

12

C.	**Interlocutory Appeal**

Finally, Defendants alternatively request certification of the May 24, 2023 Order for interlocutory review pursuant to 28 U.S.C. § 1292(b). [Doc. 66 at 15]. Under § 1292(b), a district court may certify an issue for interlocutory appeal if three criteria are met: (1) the order involves a "controlling question of law;" (2) there is "substantial ground for difference of opinion" as to the resolution of the question; and (3) certification "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Appeals under this statute are "traditionally disfavored," *Vallario v. Vandehey*, 554 F.3d 1259, 1262 (10th Cir. 2009), and "exceedingly rare," *Carbajal v. Keefer*, 51 F. Supp. 3d 1065, 1068 (D. Colo. 2014). Nevertheless, interlocutory review under 28 U.S.C. § 1292(b) "may be permitted where immediate appeal of a controlling issue will avoid protracted litigation." *Id.* The Court ultimately has discretion to determine whether to certify an order for interlocutory appeal, *id.*, and such relief "should be reserved for rare and extraordinary cases." *In re Richard D. Van Lunen Charitable Found.*, No. 22-cv-02309-REB, 2023 WL 4706758, at *3 (D. Colo. July 24, 2023) (citation omitted). To that end, the party seeking the interlocutory appeal "has a heavy burden to show that 'exceptional circumstances'" warrant immediate appellate review. *Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1065 (D. Haw. 2013) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

Defendants fail to establish that interlocutory review is warranted here. The entirety of Defendants' argument states as follows:

> Here, the issue of whether the May 2, 2019 Email constitutes a **Claim** under the Policy is controlling – if the Tenth Circuit reverses the denial of summary judgment in Defendants' favor and concludes the May 2, 2019 Email does not constitute a **Claim** – then this will "substantially accelerate[] disposition of the litigation." As the Court found in its Order, relying on the parties [sic] Statements of Undisputed

---

in the alternative a claim based on a notice of an occurrence under Section VII.B of the Policy.' Thus, the Court will not address this argument." [Doc. 65 at 6 n.4 (citation omitted)].

13

> Material Facts, "the May 2, 2019 Email is the only document that the Parties identify as a possible **Claim** that was 'made during the **Policy Period**' that would give rise to coverage under the Policy."

[Doc. 66 at 15]. Disregarding the fact that this cursory discussion fails to show any exceptional circumstances warranting immediate appellate review of the subject Order, the Court is not persuaded that its analysis of the facts of *this case*—namely, whether the May 2, 2019 Email constitutes a **Claim** under the Policy—involves a "controlling question of law" within the meaning of § 1292(b). *See Al-Turki v. Tomsic*, No. 15-cv-00524-REB-KLM, 2017 WL 1243068, at *1 (D. Colo. Mar. 24, 2017) (explaining that the phrase "question of law" under § 1292(b) generally refers to "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine" (quoting *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000))); *compare, e.g.*, *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371 (S.D.N.Y. 2008) ("The question of law certified for interlocutory appeal must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." (internal quotation marks and citations omitted)), *with Coca v. City of Dodge City*, No. 22-1274-EFM, 2023 WL 3948472, at *1, *3 (D. Kan. June 12, 2023) (denying interlocutory appeal partly on the grounds that certification of certain questions for appeal "would not materially advance the ultimate resolution of [the] case" insofar as the questions were "inextricably entwined with the case as a whole").

Accordingly, the Motion for Reconsideration, including Defendants' request for certification of the May 24, 2023 Order for interlocutory appeal, is **DENIED**.

### II.     Motion for Judgment on the Pleadings

As previously mentioned, after the Court ruled on the Motion for Summary Judgment, Defendants filed a Motion for Judgment on the Pleadings, arguing that "Plaintiffs have failed to state claims upon which relief may be granted." [Doc. 74 at 1]. The Court finds that the Motion

for Judgment on the Pleadings is improper and, therefore, denies the motion for the reasons stated below.

At the outset, the motion is untimely. Specifically, Defendants filed the Motion for Judgment on the Pleadings on August 8, 2023—more than 10 months *after* the dispositive motion deadline on September 30, 2022. *See* [Doc. 38 at 2]. But Defendants never requested leave of Court to amend the Scheduling Order or file any dispositive motion out of time. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). This reason alone warrants denial of the Motion for Judgment on the Pleadings.

But, even if Defendants had requested leave to amend the Scheduling Order for this purpose, the Court would have denied such a request. A Rule 12(c) motion is evaluated under the same standard applicable to a Rule 12(b)(6) motion to dismiss, which tests the sufficiency of the allegations in the operative complaint. *See Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223–24 (10th Cir. 2009). Given this standard, it is unclear why Defendants waited until after the close of discovery *and* the Court's ruling on their Motion for Summary Judgment to test the sufficiency of the Second Amended Complaint that was filed well over a year ago, on March 8, 2022. Nor does it promote judicial efficiency for this Court to focus upon the sufficiency of a pleading long after the close of discovery. *See* Fed. R. Civ. P. 1; *see also EEOC v. JBS USA, LLC*, 481 F. Supp. 3d 1204, 1212 (D. Colo. 2020) ("A district court has discretion to deny a Rule 12(c) motion if a party engages in 'excessive delay.'" (citation omitted)); *S.E.C. v. Wolfson*, 539 F.3d 1249, 1265 (10th Cir. 2008) (concluding that the district court did not err in denying the defendants' Rule 12(c) motion that was filed after the parties had moved for summary judgment, noting, *inter alia*, that "[f]or all purposes relevant to [the] case, the time for properly testing the sufficiency of the complaint had passed"); *cf. Lozada v. Dale Baker Oldsmobile, Inc.*, 145 F. Supp.

15

2d 878, 884 (W.D. Mich. 2001) ("I am satisfied that the present motions are in violation of this court's scheduling order, placing significant burdens on the court and creating the potential for delay of the proceedings. Parties may not make a practice of litigating piecemeal, trotting out new arguments whenever another has failed.").

In addition, the motion is also untimely under Rule 12(c). That rule provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Defendants contend that because "the trial date is set for October 23, 2023, a date that is nearly three months away[,] [t]his motion is thus timely as it will not delay the trial." [Doc. 74 at 7]. The Court respectfully disagrees. Based on this District's standard briefing schedule, *see* D.C.COLO.LCivR 7.1(d), the Motion for Judgment on the Pleadings will not be fully briefed until September 12, 2023, fewer than six weeks before trial is scheduled to commence. Thus, the Court is not persuaded that the instant motion will not delay trial. And, in any event, Defendants are not precluded from raising the defense of failure to state a claim at trial. *See* Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . (B) by a motion under Rule 12(c); or (C) at trial.").[7] Accordingly, the Motion for Judgment on the Pleadings is **DENIED**.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Defendants' Motion for Reconsideration of Order Denying Summary Judgment or, in the Alternative, for Leave to Appeal [Doc. 66] is **DENIED**; and

---

[7] What is more, the Motion for Judgment on the Pleadings exceeds this Court's page limitations for such motions. *See* Civ. Practice Standard 10.1(c)(1).

(2) Defendants' Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) [Doc. 74] is **DENIED**.

DATED: August 15, 2023                    BY THE COURT:

_____
Nina Y. Wang
United States District Judge